IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**SARAH PARKER**                                                                                    **PLAINTIFF**

v.                           Case No. 4:11-cv-0689-KGB

**BHC PINNACLE POINTE HOSPITAL, INC.
d/b/a/ PINNACLE POINT BEHAVORIAL
HEALTHCARE SYSTEM d/b/a THE POINTE
OUTPATIENT BEHAVORIAL HEALTH SYSTEMS;
AND CHAD CORNELIUS**                                                              **DEFENDANTS**

## OPINION AND ORDER

Plaintiff Sarah Parker brings this action against defendants BHC Pinnacle Pointe Hospital, Inc., d/b/a Pinnacle Pointe Behavioral Healthcare System, d/b/a The Pointe Outpatient Behavioral Health Systems ("Pinnacle Pointe") and Chad Cornelius.  As to separate defendant Pinnacle Pointe, Ms. Parker alleges a claim for age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), claims for age and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. §§ 2000e et seq. ("Title VII"), and pendent state law claims for gender discrimination and retaliation under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 *et seq*. ("ACRA").  As to separate defendant Mr. Cornelius, Ms. Parker alleges only a claim for retaliation under the ACRA (Dkt. No. 16, Am. Compl, ¶ 3).  Defendants move for summary judgment (Dkt. No. 28).  Ms. Parker has responded (Dkt. No. 35), and defendants have replied (Dkt. No. 38).  For the reasons discussed below, defendants' motion is granted.

I.      **Factual Background**

The following facts are undisputed.[1] Pinnacle Pointe is a 124-bed psychiatric hospital which offers behavioral, psychiatric, and other mental health treatment and programs to children and adolescents ages 5 to 17.

As of September 7, 2010, Ms. Parker had worked as a registered nurse at Pinnacle Pointe for 11 years. Ms. Parker was the house supervisor for the 11:00 p.m. to 7:00 a.m. shift. The house supervisor is the ranking manager on duty. On September 7, 2010, Tom Sheppard was the Assessment and Referrals nurse for the 11:00 p.m. to 7:00 a.m. shift.

Pursuant to hospital policy, if a prospective patient has a medical condition that Pinnacle Pointe cannot treat, admission is not appropriate. On September 7, 2010, a child presented at Pinnacle Pointe after Little Rock police found him wandering the streets in his underwear. Ms. Parker and Mr. Sheppard performed an assessment on the child. Ms. Parker admits for purposes of this motion that the child's pulse was extremely fast and his blood pressure was very high and that she and Mr. Sheppard determined the child needed medical care that Pinnacle Pointe could not provide. She denies the child was unstable. She admits that Pinnacle Pointe requires the nurse to perform a nursing clinical assessment to determine vital signs and if the patient is medically stable.

The parties dispute whether the physician on call, Dr. Lynn Thomas, ordered a transfer of the child from Pinnacle Pointe to Arkansas Children's Hospital. Defendants contend Dr. Thomas ordered the transfer, while Ms. Parker contends there was no transfer order or Emergency Medical Treatment and Active Labor Act ("EMTALA") transfer. Defendants

---

[1] The undisputed facts are taken from the defendants' Statement of Undisputed Facts (Dkt. No. 29) and plaintiff's Response to Statement of Undisputed Facts (Dkt. No. 36), unless otherwise noted by specific citation.

contend that Ms. Parker, as the ranking manager on duty, "turned this visibly impaired child away instead of admitting him or arranging for a medical transfer to another facility." (Dkt. No. 30-1, Mem. Br. in Supp. of Defs.' Mot. for Summ. J., at 2). Ms. Parker contends she arranged for the police to transport the child. The parties agree the child was transported in the back of a police car from Pinnacle Pointe to Arkansas Children's Hospital.

The parties dispute whether the non-medical transfer was a violation of Pinnacle Pointe's policy because it purportedly placed the child in substantial risk of harm. Defendants contend Pinnacle Pointe's policy is to transfer a child whose physical condition needs medical care. Ms. Parker admits this is a policy but contends this child was not admitted and was transported to Arkansas Children's Hospital according to the parent's instructions. Ms. Parker contends that a transfer without the parent's informed consent would have violated the law. She also contends this child's transfer was not necessarily inconsistent with nursing judgment.

Defendants contend that, if the nurse determined that Pinnacle Pointe was unable to deliver the care that the child needed, the nurse was expected to contact the house supervisor or whoever is in charge to coordinate transfer to the appropriate facility, to contact the facility, to of course have the doctor involved too, and to give a report to the receiving facility. Although Ms. Parker admits this, she maintains that there is no evidence here of a doctor's order, that the child was unstable, or that the child's parent consented. Ms. Parker maintains she did not know of any doctor's order requiring a transfer by ambulance, that the child's mother wanted the child transferred by the police, and that the mother did not give informed consent for a transfer by ambulance.

Ms. Parker admits solely for purposes of this motion that she called her supervisor who was the Director of Nursing, Mr. Cornelius, at home around 5:30 the morning of September 7,

3

2010.  The parties dispute what was said during that call.  Ms. Parker admits she was concerned she would be fired.  Ms. Parker admits she then met with Sherri James, Director of Assessment and Referral, and that Ms. James was quite upset when she learned what Ms. Parker and Mr. Sheppard did with respect to the child.  Ms. Parker and Mr. Sheppard were placed on administrative leave pending an investigation.

On September 21, 2010, Mr. Cornelius and James Howe, Director of Human Resources, called Ms. Parker and told her they were going to have to let her go.  Ms. Parker admits she was not aware of any reason Mr. Cornelius would have to retaliate against her.  She acknowledges she was told "that it had been a very, very tough decision, but they had no recourse but to let me go."  Ms. Parker admits she told her husband she was fired "for one mistake."  Mr. Sheppard, the 51-year-old male nurse who also was involved in assessing the child, was discharged over the incident.  Ms. Parker acknowledges Mr. Sheppard admitted the child should have been transferred by ambulance.

Defendants contend Ms. Parker's violation of policy warranted discharge.  Ms. Parker contends she was terminated because of her age and gender (Dkt. No. 16, Am. Compl.).  Ms. Parker contends that similarly situated individuals not in a protected class were treated differently.

She claims individuals in management asked her about her retirement plans, including Lisa Tulley and Susan Lowrey.  Ms. Parker admits Ms. Tulley was not in Ms. Parker's chain of command, but Ms. Parker maintains individuals in her chain of command also made comments about her retirement plans.  She admits that Mr. Cornelius asked her if she wanted to take an additional day off per week after she came back to work from cataract surgery in 2009.  Ms. Parker acknowledges she appreciated the offer, took it, and worked only four days per week for a

period of time. Ms. Parker contends that she did not receive timely evaluations because of her income; she claims Pinnacle Pointe did not want to give her an evaluation and concomitant raise because she was making a lot of money. She maintains this was inconsistent with policy and demonstrates age bias. She admits she never thought about her age or gender being the reason for the delay in her evaluation and admits that Mr. Cornelius told her "he had to get those all caught up," not just her evaluation. Regardless, she believes corporate made the decision to discharge her because of her high salary and her age.

Ms. Parker admits that she never had the impression that Mr. Cornelius treated female employees more harshly than male employees. She admits that both male and female supervisors failed to approve her vacation or paid-time-off requests. She admits Pinnacle Pointe was a 24-hour per day, seven-days per week facility that required a house supervisor on duty at all times. She admits that other house supervisors worked holidays and that she was the house supervisor for the 11:00 p.m. to 7:00 a.m. shift. She admits she was not offended by terms of endearment like "babe" or "sugar" used by Mr. Cornelius or other nurses. Ms. Parker also admits that Keith Helton, another mental healthcare tech, failed to document periodic checks of a patient and was terminated for that reason.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of

material fact. *Id.* at 323. The burden then shifts to the nonmoving party to establish there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel,* 121 F.3d 364, 366 (8th Cir. 1997). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373,* 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Celotex,* 477 U.S. at 331.

**III.     Analysis**

Ms. Parker alleges against separate defendant Pinnacle Pointe a claim for age discrimination under the ADEA, claims for age and gender discrimination and retaliation under Title VII, and pendent state law claims for gender discrimination and retaliation under the ACRA. Ms. Parker alleges against separate defendant Mr. Cornelius only a claim for retaliation under the ACRA. The Court will examine these claims in turn.

**A.     Age Discrimination Claims Under the ADEA, Title VII, and the ACRA**

Ms. Parker can establish a *prima facie* claim of age discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Ms. Parker offers no direct evidence of discrimination. Therefore, the Court applies the *McDonnell Douglas* analysis to her age discrimination claim. To establish a *prima facie* case of age discrimination, Ms. Parker must show she: (1) was at least 40 years old, (2) suffered an adverse employment action, (3) was meeting her employer's legitimate expectations at the time of the adverse employment action, and (4) there is some additional evidence that age was a factor in the employer's adverse employment decision. *Gibson v. American Greetings Corp.*, 670 F.3d 844,

6

856 (8th Cir. 2012); *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 637 (8th Cir. 2011).   If she can establish a *prima facie* case, Pinnacle Pointe must articulate "a non-discriminatory, legitimate justification for its conduct, which rebuts the employee's *prima facie* case."  *Bone*, 686 F.3d at 954 (citing *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005), and quoting *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2011)).  Once Pinnacle Pointe does so, then Ms. Parker must prove Pinnacle Pointe's reason was "mere pretext for discrimination."  *Gibson*, 670 F.3d at 856 (quoting *Haigh v. Gelita USA, Inc.,* 632 F.3d 464, 468 (8th Cir. 2011)).  The Court analyzes Ms. Parker's Title VII and ACRA age-discrimination claims under the same standards.  *Gibson*, 670 F.3d at 853.  "Furthermore, to succeed in proving age discrimination a plaintiff 'must show, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action.'"  *Id.* at 856.

      This Court determines that Ms. Parker has not presented sufficient evidence to make out a *prima facie* case of age discrimination because she is unable to demonstrate she was meeting her employer's legitimate expectations at the time of the adverse employment action.  This Court acknowledges that the standard for establishing a *prima facie* case may instead require as the third element that plaintiff  demonstrate only that she possesses the basic skills necessary for performance on the job, not that she was meeting her employer's legitimate expectations at the time of the adverse employment action.  *See Haigh v. Gelita USA, Inc*., 632 F.3d 464, 469 (8th Cir. 2011) (noting but not resolving the conflict in Eighth Circuit caselaw on this point).  The *Haigh* court determined that requiring plaintiff to disprove the reasons given for discharge during plaintiff's *prima facie* case would short-circuit the analysis under *McDonnell Douglas* and, therefore, examined this alternative standard for establishing a *prima facie* case.  *Haigh*, 632 F.3d at 470.  Even if this Court assumes for purposes of this motion only that Ms. Parker can

establish a *prima facie* case of age discrimination and focuses its analysis at the pretext stage, Ms. Parker has failed to present adequate proof to overcome Pinnacle Pointe's proffered legitimate, non-discriminatory reason for terminating Ms. Parker. *See, e.g., Bone*, 686 F.3d at 954 (focusing the summary judgment analysis on the pretext stage); *Thomas v. Runyon*, 108 F.3d 957, 959 (8th Cir. 1997) (same); *Ruby v. Springfield R-12 Public School District*, 76 F.3d 909, 911 (8th Cir. 1996) (same).

Pinnacle Pointe offers the following reason for discharge:

> On the night of September 7, 2010, Tom Sheppard and Sarah Parker did not follow our policy and practice in transferring a child who presented for admission. Dr. Lynn Thomas was at home and based on Parker's and Sheppard's assessment ordered the child to be transferred to Children's Hospital. Neither Sheppard nor Parker coordinated an appropriate transfer, contacted the receiving facility, or gave any report to the receiving facility. They should have. We believed that failing to send the child in an ambulance and not contacting the receiving facility was a potential EMTALA violation and a violation of our policy. In this instance, the nurse, not the physician, is going to be in charge of calling the ambulance or the receiving facility.

(Dkt. No. 28-1, Exhibit A to Defs.' Mot. for Summ. J., Howe Aff., ¶ 7).

The burden on Pinnacle Pointe to articulate a non-discriminatory, legitimate justification for its conduct is not onerous. *Bone*, 686 F.3d at 954. When reviewing the employer's articulated reasons for discharge, and the plaintiff's refutation thereof, this Court's "inquiry is limited to whether the employer gave an honest explanation of its behavior." *Wilking v. County of Ramsey,* 153 F.3d 869, 873 (8th Cir. 1998) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)). "Accordingly, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Wilking*, 153 F.3d at 873 (internal quotations and citations omitted). The Court concludes Pinnacle Pointe has given a non-discriminatory, legitimate justification for its conduct.

8

The Court views the explanation offered by Mr. Howe in his affidavit as consistent with the explanation offered by defendants in response to Ms. Parker's first interrogatory directed at defendants which asked defendants to "[d]escribe any communications with Defendants, Defendants' managers, or supervisors [and] Plaintiff, regarding Plaintiff's work performance, whether in an oral or written form. . . ." In response to this discovery request, defendants stated in part: "Chad Cornelius spoke with Parker about her actions and informed her by sending this medically unstable patient to an emergency department in the back of a police car was an EMTALA violation. He then explained to her the receiving emergency department should have been contacted with patient information, a 'doctor to doctor' transfer, and that the patient should have been transported via ambulance. . . ." (Dkt. No. 36-4 at 3-4, Exhibit D to Resp. to Statement of Undisputed Facts).

These descriptions of what Pinnacle Pointe expected from Ms. Parker as its employee are consistent with the practice Susan Lowrey, a former Pinnacle Pointe employee who held the position of Assistant Director of Nursing, a witness identified by Ms. Parker, and a plaintiff in her own suit against Pinnacle Pointe, outlined as the procedure she would follow for a transfer (Dkt. No. 28-4, Exhibit D to Defs.' Mot. for Summ. J., Lowrey Dep. at 11:15 to 12:20; 23:8-24:25). For these reasons, the Court rejects any suggestion that Pinnacle Pointe somehow substantially changed its proffered legitimate, non-discriminatory reason for firing Ms. Parker. *See Twiggs v. Selig*, 679 F.3d 990, 994 (8th Cir. 2012) (determining that a change in an employer's legitimate, non-discriminatory reason for firing an employee is probative of pretext only if the discrepancy is "substantial").

In response to the motion for summary judgment, Ms. Parker asserts that Pinnacle Pointe could not render any treatment to the child without parental consent, citing Arkansas Code

Annotated § 16-114-206(b)(1).  Ms. Parker goes on to cite other provisions of Arkansas law to suggest that the potential for kidnapping, battery, and coercion exist based on these facts.

The Court notes that Ms. Parker in her deposition stated as follows:

Q. Why didn't you call an ambulance of the transfer here instead of letting him go with the police?

A. That, I don't know.  I cannot answer it, because I really don't know why we didn't.

Q. Neither you – did you or Mr. Sheppard fill out a memorandum of transfer?

A. I didn't.  I don't know whether he did or not.

Q. Okay.  You're supposed to, right?

A. Yes.

Q. I mean, there needs to be a record that the kid was seen and then left or was sent to someplace?

A. Yeah.

Q. In hindsight, should one of you have called an ambulance?

A. Probably so.  It was basically at the mother's request.

(Dkt. No. 28-2, Exhibit B to Defs.' Mot. for Summ. J., Pl. Dep. at 31:13 to 32:3).

Accepting Ms. Parker's version of events as true for purposes of this motion, after assessing the child, Ms. Parker failed to call an ambulance for transport, failed to alert her supervisors at the time of or document in the chart the mother's alleged refusal to have the child transported by ambulance, and failed to notify the receiving facility that the child was on his way or to give a report to the receiving facility regarding the child.  In short, even under her version of events, Ms. Parker failed to follow what Pinnacle Pointe and Ms. Lowrey maintain was expected of an employee.

Because Pinnacle Pointe articulated a legitimate, non-discriminatory justification for discharging Ms. Parker, "the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely pretext for discrimination." *Bone*, 686 F.3d at 955. Ms. Parker has the burden of persuasion at all times. *Id*. Her "burden to show a genuine issue of material fact regarding pretext 'merges with the ultimate burden of persuading the court that [she was] the victim of intentional discrimination.'" *Id*. (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011), and quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). To succeed in proving age discrimination, she must show, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. *Gibson*, 670 F.3d at 856 (quoting *Haigh,* 632 F.3d at 468).

When the Court views all of the record evidence in the light most favorable to Ms. Parker, the Court concludes she has failed to present adequate proof to overcome Pinnacle Pointe's proffered legitimate, non-discriminatory reason for terminating her. Based on the record evidence, including but not limited to the alleged comments made by others, inquiries into retirement, failure to complete timely performance reviews, and alleged comparators who Ms. Parker contends were treated more favorably than she was treated, the Court determines Ms. Parker has failed to create a genuine issue of material fact as to whether Pinnacle Pointe's proffered legitimate, non-discriminatory reason for terminating her was merely a pretext for intentional age discrimination and has failed to offer sufficient evidence for a reasonable trier of fact to infer discrimination.

The alleged comments by others are not adequate proof to overcome Pinnacle Pointe's proffered legitimate, non-discriminatory reason for termination. Ms. Parker claims Lisa Tulley asked her if she was going to retire (Dkt. 36-2, at 63, Exhibit B to Resp. to Statement of

Undisputed Facts, Pl. Dep. at 63).[2] Ms. Parker concedes that Ms. Tulley was not her boss and acknowledges she did not feel there was "anything" to Ms. Tulley's questions (Pl. Dep. 63-64, 69). Further, Ms. Tulley's comments were made in 2007 (Pl. Dep. at 72). Ms. Parker also alleges that other people at Pinnacle Pointe inquired as to her post-employment plans (Pl. Dep. 64). She admits some of these people were her friends and that none were in management (Pl. Dep. at 64, 72). Ms. Parker does not contend that the people involved in the discussion about her discharge – Chad Cornelius, James Howe, Sherri James, Lisa Evans, or Joyce Cloud – ever made any such inquiries (Pl. Dep. at 73).

Ms. Parker does allege that Risk Manager Anthony Logan asked her one day in the hall if she was "still here." Mr. Logan may have asked this question in 2009 because he usually came in after Ms. Parker left after working the night shift, but she was still there the day he asked her this question as she had been held over (Pl. Dep. at 73). Ms. Parker admits that she never complained about this alleged comment to anyone (Pl. Dep. at 74).

Ms. Parker also alleges that Mr. Cornelius asked her if she wanted to take an additional day off per week after she came back to work from cataract surgery. Ms. Parker acknowledges she appreciated the offer, took it, and worked only four days per week for a period of time (Pl. Dep. at 69-70). These events occurred in September 2009 (Pl. Dep. 71).

When the Court views all of this evidence in the light most favorable to Ms. Parker, the Court concludes Ms. Parker has failed to create a genuine issue of material fact as to pretext and has failed to offer sufficient evidence for a reasonable trier of fact to infer discrimination. The evidence of alleged remarks dates those remarks to sometime between 2007 and 2009; in other

---

[2] References to plaintiff's deposition refer to the pages of plaintiff's deposition included in Dkt. 36-2, Exhibit B to Resp. to Statement of Undisputed Facts, unless otherwise noted by specific citation.

words, the alleged remarks were remote in time from Ms. Parker's termination (Pl. Dep. at 63, 71, 73, 74). Remarks that are remote in time and not repeated do not create a triable issue on the question of pretext. *Colder v. TCI Cablevision of Missouri, Inc.*, 298 F.3d 723, 730 (8th Cir. 2002) (examining "stray remarks" and concluding that, because none of the remarks were made within one year of plaintiff's termination and none were repeated, the stray remarks did not create a triable issue on the question of pretext). Likewise, remarks that have no "causal link" between the remark and the decisional process leading to termination do not suffice to create a triable issue. *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 428 (8th Cir. 1999) (determining that stray remarks remote in time to the adverse employment action and without evidence to establish a "causal link" between the comments and the decisional process do not support a finding of pretext for intentional age discrimination).

Ms. Parker's testimony reveals that none of the decision makers asked any questions about her retirement plans. Ms. Lowrey did not identify who allegedly asked Ms. Parker if she was going to retire or if she wanted to come back to work after an accident Ms. Parker had while Ms. Lowrey was there. For these reasons, Ms. Lowrey's testimony does nothing to controvert that the decision makers did not ask these questions of Ms. Parker. Regardless, "[r]easonable inquiries into an employee's retirement plans do not permit an inference of age discrimination." *Betz v. Chertoff*, 578 F.3d 929, 934 (8th Cir. 2009). *See also Cox v. Dubuque Bank & Trust Co.*, 163 F.3d 492, 497-98 (8th Cir. 1998) (determining that an employer may make reasonable inquiries into retirement plans of its employees and that such inquiries should not be relied on to prove intentional discrimination, unless such inquiries are so unnecessary and excessive as to constitute evidence of discriminatory harassment); *Montgomery v. John Deere & Co.*, 169 F.3d 556, 560 (8th Cir. 1999) (same). The inquiries described here do not rise to the level of being so

unnecessary and excessive as to create a triable issue of whether the inquires constitute evidence of discriminatory harassment by Pinnacle Pointe.

Ms. Parker also contends that Pinnacle Pointe terminated her because of her high salary "as well as her age." Employment decisions "motivated by factors other than age (such as retirement eligibility, salary, or seniority), even when such factors correlate with age, do not constitute age discrimination." *EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948, 951 (8th Cir. 1999). Age discrimination is not necessarily inferred when an employee is terminated due to her high salary or length of service. *Slather v. Sather Trucking Corp.*, 78 F.3d 415, 418-19 (8th Cir. 1996). Age discrimination may exist when an employer terminates an employee based on a factor such as salary or experience when the employer "presupposes a correlation with age and uses that factor as a proxy for age." *Id.* (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612-13 (1993)). Viewing all evidence in the light most favorable to Ms. Parker, she has not made a sufficient showing to permit age discrimination to be inferred here. Ms. Parker contends that she did not receive timely evaluations because of her income; she claims Pinnacle Pointe did not want to give her an evaluation and concomitant raise because she was making a lot of money. She maintains this was inconsistent with policy and demonstrates age bias. However, she admits she never thought about her age or gender being the reason for the delay in her evaluation until after her termination and admits that Mr. Cornelius told her "he had to get those all caught up," not just her evaluation. She also admits in her complaint that she received an evaluation, an excellent rating, and a raise in pay along with $2,000 in back pay based on the evaluation (Dkt. No. 16, Am. Compl., ¶15).

A plaintiff may show that an employer's stated reasons are pretextual by establishing that similarly situated employees were treated differently. *Martinez v. W.W. Grainger, Inc.*, 664 F.3d

225, 230 (8th Cir. 2011). However, to do so, the similarly situated employees must be similarly situated in all respects. *Amini v. City of Minneapolis*, 643 F.3d 1068, 1076 (8th Cir. 2011). At the pretext stage, the standard for determining whether employees are similarly situated is "rigorous." *Bone*, 686 F.3d at 956. "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 776 (8th Cir. 2003). The younger employees Ms. Parker points to are not similarly situated in all relevant respects. As an initial matter, Ms. Parker points to Keith Helton, another mental health technician who was fired for his misconduct (Pl. Dep. at 99). Because Mr. Helton was fired, his situation does not support a claim that similarly situated younger employees were treated more favorably than Ms. Parker. Ms. Parker also points to Darrell Turner, a mental health technician who purportedly took patients to his home but was not disciplined. Ms. Parker's testimony regarding Mr. Turner is based on hearsay (Pl. Dep. 91-92). Pinnacle Pointe objects to this hearsay, and Ms. Parker offers no response to the objection. Ms. Parker fails to establish Mr. Turner was similarly situated in all respects yet treated more favorably, and the Court concludes inadmissible hearsay cannot be used to avoid summary judgment. *Cherry v. Ritenour School District*, 361 F.3d 474, 479-80 (8th Cir. 2004). Ms. Parker also refers to an unnamed female who was not fired for alleged misconduct, but Ms. Parker admits an employee "covered" for the unnamed female and that the unnamed female's boss was never made aware of the violation (Pl. Dep. at 100). This unnamed female was not similarly situated in all respects to Ms. Parker. Mr. Sheppard who was 51 years old at the time of the incident and younger than Ms. Parker was terminated for the same misconduct as Ms. Parker. When all of the record evidence is viewed in the light most favorable to Ms. Parker, the Court concludes she has failed to create a genuine

issue of material fact as to pretext and has failed to offer sufficient evidence for a reasonable trier of fact to infer age discrimination.

For all of these reasons, the Court grants Pinnacle Pointe summary judgment on Ms. Parker's claims of age discrimination under the ADEA, Title VII, and the ACRA.

### B. Gender Discrimination Claims Under Title VII and the ACRA

Like her age discrimination claim, Ms. Parker can establish a *prima facie* claim of gender discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas*. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011). She offers no evidence of direct gender discrimination, so the Court will apply the *McDonnell Douglas* analysis. To establish a *prima facie* case of gender discrimination, Ms. Parker must show she: (1) is in a protected class, (2) was meeting her employer's reasonable expectations, (3) was terminated, and (4) was terminated under circumstances giving rise to a reasonable inference of discrimination. *Tolen v. Ashcroft*, 377 F.3d 879, 882 (8th Cir. 2004). The Court analyzes Ms. Parker's Title VII and ACRA gender-discrimination claims under the same standards. *Crone v. United Parcel Service, Inc.*, 301 F.3d 942, 945 (8th Cir. 2002) (citing *Flentje v. First Nat'l Bank*, 340 Ark. 563, 11 S.W.3d 531, 537 (2000)).

This Court determines that Ms. Parker has not presented sufficient evidence to make out a *prima facie* case of gender discrimination for the same reasons her age discrimination claim fails. She is unable to demonstrate she was meeting her employer's legitimate expectations at the time of the adverse employment action, and the undisputed facts do not support a claim for gender discrimination. The parties agree that Mr. Sheppard, a male, was fired for the exact same

conduct as Ms. Parker. Ms. Parker does not present sufficient evidence from which a reasonable jury could conclude that gender played any role in her discharge.

Even if this Court assumes for purposes of this motion only that Ms. Parker can establish a *prima facie* case of gender discrimination and focuses its analysis on the pretext stage, Ms. Parker has failed to present adequate proof to overcome Pinnacle Pointe's proffered legitimate, non-discriminatory reason for terminating Ms. Parker. Three females were involved in the decision to terminate Ms. Parker (Dkt. No. 28-3, Exhibit C to Defs.' Mot. for Summ. J., Cornelius Aff., ¶ 7). Mr. Cornelius, Ms. Parker's direct supervisor who played a role in the decision to terminate, has a record of terminating both male and female employees (Dkt. No. 28-3, Exhibit C to Defs.' Mot. for Summ. J., Cornelius Aff., ¶ 8). Ms. Parker admits that she never had the impression that Mr. Cornelius treated female employees more harshly than male employees. She admits that both male and female supervisors failed to approve her vacation or paid-time-off requests. She admits Pinnacle Pointe was a 24-hour per day, seven-days per week facility that required a house supervisor on duty at all times. She admits that other house supervisors worked holidays and that she was the house supervisor for the 11:00 p.m. to 7:00 a.m. shift. She admits she was not offended by terms of endearment like "babe" or "sugar" used by Mr. Cornelius or other nurses. When all of the record evidence is viewed in the light most favorable to Ms. Parker, the Court concludes she has failed to create a genuine issue of material fact as to pretext and has failed to offer sufficient evidence for a reasonable trier of fact to infer gender discrimination.

For all of these reasons, the Court grants Pinnacle Pointe summary judgment on Ms. Parker's claims of gender discrimination under Title VII and the ACRA.

### C. Retaliation Claims Under Title VII and the ACRA

Ms. Parker asserts retaliation claims against Pinnacle Pointe under Title VII and the ACRA and against Mr. Cornelius under the ACRA only. This Court notes that, as a general proposition, retaliation claims under Title VII and the ACRA are analyzed under the same substantive standards. *Hill v. City of Pine Bluff, Arkansas*, 696 F.3d 709, 715-16 (8th Cir. 2012). The Court recognizes that, unlike Title VII, the ACRA imposes individual liability for retaliation when the elements of a retaliation claim have been demonstrated. *Calaway v. Practice Mgmt. Serv., Inc.*, 2010 Ark. 432 (2010).

To establish a retaliation claim, Ms. Parker must demonstrate that: (1) she engaged in a protected activity, (2) her employer's adverse employment action caused injury that would "chill a person of ordinary firmness" from continuing that activity, and (3) there was a causal connection between the two. *Hill*, 696 F.3d at 715; *Hofman v. Rubin*, 193 F.3d 959 (8th Cir. 1999). The Eighth Circuit has held that, generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999).

Defendants contend in support of their motion for summary judgment that Ms. Parker did not allege retaliation before the Equal Employment Opportunity Commission ("EEOC") and that her retaliation claim under Title VII is therefore barred. *See Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 989 (8th Cir. 2011). The record before the Court does not include a copy of Ms. Parker's EEOC Charge.

Defendants also contend that Ms. Parker's retaliation claim fails because she cannot establish the first or third elements. Ms. Parker alleges in her complaint that she was retaliated against for reporting "sexist comments" to Assistant Director of Nursing Ms. Lowrey (Dkt. No.

16, Am. Compl., ¶ 21). In her deposition testimony, however, Ms. Parker testified that she never reported any age or gender discrimination to any manager at Pinnacle Pointe and was not offended by terms such as "babe" or "sugar" used by Mr. Cornelius or other nurses related to one's gender (Pl. Dep. 129-131, 169). She admitted that, before she was terminated, she did not attribute to age or gender her not receiving timely performance evaluations (Pl. Dep. at 110-11). Further, she testified that she never complained to anyone that Mr. Cornelius had done anything that was discriminatory to anyone and was not aware of any reason Mr. Cornelius would have to retaliate against her (Pl. Dep. at 127, 129). Defendants contend Ms. Parker engaged in no protected activity and therefore cannot establish a causal link between any complaint of discrimination and the alleged adverse job action taken by defendants against Ms. Parker.

Ms. Parker makes no direct response to this argument in her opposition brief. It is not a judge's obligation to sift through the voluminous record in a quest to uncover and speculate on evidence of genuine issues of material fact that would defeat a motion for summary judgment. *Barge v. Anheuser-Bush, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Based on the record before the Court, Ms. Parker has not established a *prima facie* claim of retaliation. Even if the Court assumes for purposes of this analysis only that she established a *prima facie* case of retaliation, defendants articulated a legitimate, non-discriminatory reason for Ms. Parker's termination which Ms. Parker has failed to rebut.

Pursuant to 28 U.S.C. § 1367(c), the Court in its discretion may decline to exercise supplemental jurisdiction over remaining state law claims after it has dismissed all claims over which it has original jurisdiction. *Culbreath v. Morgan*, 3:05-CV-280-GTE, 2006 WL 2471585 (E.D. Ark. Aug. 25, 2006). The Court determines that it need not decline to exercise supplemental jurisdiction over the ACRA claims here, even those against Mr. Cornelius, given

Ms. Parker's failure to demonstrate a *prima facie* case. For these reasons, all defendants are entitled to summary judgment on Ms. Parker's retaliation claims under Title VII and the ACRA.

\* \* \*

For the reasons discussed, the Court finds that defendants' motion for summary judgment as to all plaintiff's claims should be and hereby is granted. Plaintiff Sarah Parker's age discrimination claims made pursuant to the ADEA, Title VII, and the ACRA are dismissed with prejudice; her gender discrimination claims made pursuant to Title VII and the ACRA are dismissed with prejudice; and her retaliation claims made pursuant to Title VII and the ACRA are dismissed with prejudice.

SO ORDERED this 4th day of January, 2013.

*[signature: Kristine G. Baker]*

KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE